[No. 30213-6-II.   Division Two.   October 5, 2004.]

MAYFLOWER PARK HOTEL, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*George C. Mastrodonato* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Heidi A. Irvin, Assistant*, for respondent.

*Stuart A. Heller* on behalf of Washington State Hotel & Lodging Association, amicus curiae.

MORGAN, A.C.J. — The question in this case is whether, when a hotel buys furnishings or amenities for its guests to use, it is engaging in a "retail sale" for which it must pay sales tax. The answer is yes.

The Mayflower Park Hotel purchases furnishings and amenities that it then puts in its rooms for its guests to use. Furnishings include alarm clocks, sofas, lamps, and tables.[1]

---

[1] Br. of Appellant at 6-7. A more complete list of furnishings, according to the hotel's brief on appeal, includes alarm clock radios, armoires, ashtrays, baby cribs,

Amenities include lotion, coffee, hangers, sheets, shampoo, washcloths, postcards, and Q-tips.[2] Rather than selling such items separately, Mayflower incorporates their cost into the rate it charges for each room.

After auditing Mayflower for the period January 1, 1990 through December 31, 1993, the Department of Revenue assessed a deficiency because Mayflower had not paid retail sales tax on transactions in which Mayflower had purchased furnishings and amenities to place in its rooms. Alleging that such transactions were not taxable "retail sales," Mayflower paid under protest and appealed to an administrative law judge (ALJ). When the ALJ affirmed, Mayflower appealed again to the Thurston County Superior Court, which also affirmed, and then again to this court.

The question on appeal is whether a transaction by which Mayflower purchases furnishings and amenities from its vendor is a "retail sale." If it is, Mayflower must pay sales tax.[3]

RCW 82.04.050 defines "retail sale." It provides in pertinent part:

> (1) "Sale at retail" or "retail sale" means every sale of tangible personal property (including articles produced, fabricated, or imprinted) to all persons irrespective of the nature of their business and including, among others, without limiting the scope hereof, persons who install, repair, clean, alter, improve, construct, or decorate real or personal property of or

---

bed bolts, bed frames, bedspreads, blankets, carpet, carpet pads, casters, chairs, desks, draperies, drapes, dressers, hangers, headboards, ice buckets, ironing boards, irons, lamp shades, luggage racks, mattresses, mirrors, pictures, pillows, Plexiglas signs, rollaways, shower curtains, signage, sofas, standing lamps, table lamps, tables, televisions, upholstery, and wastebaskets.

[2] Br. of Appellant at 7. A more complete list of amenities, according to the hotel's brief on appeal, includes bath mats, body lotion, coffee, conditioner, cotton balls, cream and sugar, electric lightbulbs, glassware, guest directories, guest keys, guest questionnaires, hairnets, hangers, ironing board pads, key folders, Kleenex dispensers, laundry bags, laundry slips, magazines, matches, mattress pads, notepads, paper coasters, pens, pillowcases, postcards, Q-tips, razors, robes, sewing kits, shampoo, sheets, shoe mitts, shower curtains, slippers, soap, stationery, tissue paper, toilet paper, toothbrushes, towels, tub mats, washcloths, and wastebasket liners.

[3] RCW 82.08.020(1), .050.

for consumers other than a sale to a person who presents a resale certificate under RCW 82.04.470 and who:

(a) Purchases for the purpose of resale as tangible personal property in the regular course of business without intervening use by such person . . .

. . . .

(2) The term "sale at retail" or "retail sale" shall include the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following:

. . . .

(f) The sale of and charge made for the furnishing of lodging and all other services by a hotel . . . ;

(g) The sale of or charge made for tangible personal property, labor and services to persons taxable under (a), (b), (c), (d), (e), and (f) of this subsection when such sales or charges are for property, labor and services which are used or consumed in whole or in part by such persons in the performance of any activity defined as a "sale at retail" or "retail sale" even though such property, labor and services may be resold after such use or consumption. Nothing contained in this subsection shall be construed to modify subsection (1) of this section and nothing contained in subsection (1) of this section shall be construed to modify this subsection.

This statute requires that we distinguish two different types of transactions. In one type, a hotel like Mayflower (a) rents a room and (b) collects a tax that the guest pays.[4] In the other type, a hotel like Mayflower (a) buys furnishings or amenities and (b) pays a tax that the vendor collects.[5]

Subsection (2)(f) governs the first type of transaction. When it states that "retail sale" includes "the furnishing of lodging . . . by a hotel," it requires that a hotel like Mayflower collect sales tax each time it rents a room to a guest.

■ Subsection (2)(g) governs the second type of transaction. When it speaks of "persons taxable under . . . (f) of this

---

[4] RCW 82.08.050.

[5] RCW 82.08.050.

subsection," it includes hotels, like Mayflower, that must collect sales tax each time they rent lodging. When it speaks of "the sale of or charge made for tangible personal property," it includes a hotel's purchase of furnishings and amenities from a vendor. In sum then, subsection (2)(g) requires that a hotel like Mayflower pay sales tax each time it purchases furnishings or amenities—provided that the hotel uses or consumes the furnishings or amenities in the course of renting rooms to its guests. So long as this proviso is met, it does not matter whether the hotel "consumes" the item (e.g., coffee or shampoo), or "uses" and then resells the item (e.g., a sofa or bed).

Mayflower argues that it does not "use or consume" the furnishings or amenities that it places in its guest rooms; rather, it says, its guests do that.[6] Like the courts elsewhere, however, we think that a hotel "uses or consumes" such items, in the course of furnishing lodging, when it puts them in its rooms for the comfort of its guests.[7] That its

---

[6] Appellant's Reply Br. at 8 ("hotel guest has a right of exclusive possessory use of the room and its contents") (emphasis omitted).

[7] *Hotels Statler Co. v. District of Columbia*, 199 F.2d 172, 174 (D.C. Cir. 1952) (china, glass, table linens, bed linen, towels, light bulbs, draperies and carpets "do not become parts of the room but are properties used by the hotel in furthering the sales of its rooms . . . . [S]oap, toothpicks, stationery and similar articles actually consumed by guests . . . are de minimis."); *Atlanta Americana Motor Hotel Corp. v. Undercofler*, 222 Ga. 295, 149 S.E.2d 691, 695 (1966) ("the plaintiff itself used the property to make its rooms livable, and thus rentable to guests"); *Theo. B. Robertson Prods. Co. v. Nudelman*, 389 Ill. 281, 59 N.E.2d 655, 657 (1945) ("While no agent or employee of the hotel actually uses or consumes such paper articles and soaps, the use is no less the use by the hotel, for it is generally recognized that such articles are to be furnished by the hotel as a standard method of doing its business just as the carpets on the floor and the pictures on the wall are furnished."); *see also City of Colo. Springs v. Inv. Hotel Props., Ltd.*, 806 P.2d 375, 379 (Colo. 1991) ("Investment Ltd. purchased the hotel property primarily for its own use in the conduct of its business of providing furnished rooms to guests for rental fees" and thus it was not "a wholesale purchase for resale and [was] subject to the imposition of a use tax"); *Ky. Bd. of Tax Appeals v. Brown Hotel Co.*, 528 S.W.2d 715, 718 (Ky. 1975) (in a use tax case, "the hotel is the ultimate consumer and user of the tangible personal property, even though the guests paid sales tax on the room-rental charge and the price of the meal"); *Telerent Leasing Corp. v. High*, 8 N.C. App. 179, 174 S.E.2d 11, 16 (1970) ("The consideration paid is for the lodging or accommodation itself—not for a specific bed, lamp, painting, table, chair or television."); *Sine v. State Tax Comm'n*, 15 Utah 2d 214, 390 P.2d 130, 131 (1964) ("the motel owner is the ultimate consumer [of linens, towels,

guests may also use or consume such items is not material here.

Mayflower argues that any transaction in which it purchases furnishings or amenities is not a "retail sale" because of RCW 82.04.050(1)(a). As already seen, that statute excludes from the definition of "retail sale" any "sale to a person who presents a resale certificate under RCW 82.04.470 and who . . . [p]urchases for the purpose of resale as tangible personal property in the regular course of business without intervening use by such person." But as we discussed in the preceding paragraph, we think that Mayflower makes "intervening use" of the items it purchases when it puts those items in its rooms for use by its guests.[8]

■ Mayflower contends that former WAC 458-20-166(4), which it calls "Rule 166," conflicts with RCW 82.04.050.[9] We perceive no conflict, and even if we did, the statute would trump the regulation.[10]

Mayflower argues that it will suffer double taxation on the same transaction if it is taxed both (a) when it rents a room to a guest and (b) when it buys furnishings or

---

soap, mattress covers, blankets, etc.] under the letter and spirit of the use tax act").

[8] *Cf. Seattle Filmworks, Inc. v. Dep't of Revenue*, 106 Wn. App. 448, 458, 24 P.3d 460 (2001) (film processor put order forms to intervening use by imprinting each with name of customer).

[9] WAC 458-20-166(4) provides in part:

(4) **Retail Sales Tax.** Persons providing lodging and other services generally must *collect* retail sales tax on their charges for lodging and other services as discussed below. They must *pay* retail sales or use tax on all of the items they purchase for use in providing their services.

. . . .

(g) **Purchases of tangible personal property for use in providing lodging and related services.** All purchases of tangible personal property for use in providing lodging and related services are retail sales. The charge for lodging and related services is for services rendered and not for the resale of any tangible property.

(Emphasis added.)

[10] *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980); *Edelman v. State ex rel. Pub. Disclosure Comm'n*, 116 Wn. App. 876, 886, 68 P.3d 296 (2003), *review granted*, 150 Wn.2d 1025 (2004); *Wash. Fed'n of State Employees v. State Pers. Bd.*, 54 Wn. App. 305, 308, 773 P.2d 421 (1989).

amenities from a vendor. Like the legislature, however, we think these are different transactions.

Mayflower's remaining arguments need not be reached or are meritless. Mayflower's claim for reasonable attorney fees is denied.

The judgment is affirmed.

BRIDGEWATER and VAN DEREN, JJ., concur.

Review denied at 154 Wn.2d 1022 (2005).